Schmuck, Appellent, *v.* Heilman.

Argued March 16, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*John A. Hoober,* for appellant.

*George Hay Kain,* and with him *Robert C. Fluhrer,* for appellee.

Opinion by Cunningham, J., July 14, 1932:

The trial of this action of trespass resulted in a verdict for plaintiff in the sum of $300. Deeming this amount inadequate, he moved for a new trial and the defendant, having submitted a point for binding instructions, moved for judgment notwithstanding the verdict; after argument of these motions the court below, in an opinion by Niles, P. J., who also presided at the trial, refused a new trial and granted defendant's motion for judgment n. o. v.; from the judgment for defendant thus entered upon the whole record we now have this appeal by plaintiff.

The negligence charged was the refusal of the driver of one of defendant's taxicabs to afford to

plaintiff, while a passenger therein, such assistance as it was the driver's duty, under the circumstances then existing, to render.

Reading the evidence in the light most favorable to appellant and resolving the conflicts therein in his favor, the material facts may be thus epitomized: Schmuck, the appellant, accompanied by a companion, Eberly, both being employes in a cigar factory at Red Lion, York County, traveled together by trolley to the city of York, a distance of about ten miles, on the afternoon of April 23, 1928; during the afternoon, which was foggy and damp, they visited a bootlegger's establishment where each had several drinks of liquor. Shortly after leaving this place and while traveling along an alley, appellant fell to the sidewalk in a helpless condition. Eberly summoned a taxicab, owned by the appellee and operated by one of his drivers; with the assistance of the driver and a bystander appellant was placed on the rear seat in the body of the cab and the driver was instructed by Eberly, who entered the cab with appellant, to take them to Red Lion. Shortly after starting, appellant slipped from the seat and lay on the floor of the cab across the metal cover of the heater located in the floor about midway between the front of the rear seat and the back of the driver's seat.

The heater was produced in court and was thus described by appellee's manager: "This is the heater that belongs in the cab. It rests perfectly flat on the floor. You can see the pipes there. They are about an inch and a half pipe. The hole in there near the floor, which is a wooden floor, is drilled the exact size of the pipe ...... It is the exhaust of the motor that goes through ...... In the second place, the heater is guarded by this guard. It is a brass guard, and you can't get near the pipes that the heat comes in. When you take that guard off, you can get a look at what it looks like on the inside. Those are guards

raised up there to keep people from tramping it down, so they can't get to the pipe that the heat goes through. There is air circulating through there all the time; that is, the air that gets heated. That pipe is the one that does the heating for the air that passes through here. When this guard is on, there is no chance in the world of getting past that pipe.''

According to Eberly, the drive to Red Lion took about forty-five minutes; he testified that during the journey he tried to get appellant up on the seat but failed and then asked the driver ''whether he would help [him] get [appellant] up to the seat,'' but the driver merely told him (Eberly) ''to try and waken him;'' and that he shook appellant but ''got no response.'' This testimony was flatly denied by the driver but for the purposes of this appeal we must accept Eberly's version. He testified further that appellant was ''laying right on this heater, and it wasn't a very comfortable position, and it was really rather warm in the car.''

Upon reaching Red Lion, the driver, under instructions from Eberly, took his passengers to the residences of several of their friends in an effort to borrow the money to pay the taxi fare. These friends came to the cab and saw appellant lying on the floor; one of them, upon searching his pockets, found he had only $2 to apply upon a bill of more than $6. Although one of them testified ''it was pretty hot'' in the taxi, no effort seems to have been made by any of his friends to get him back on the seat.

Appellee's driver was then requested to take appellant to his home several miles beyond Red Lion over a dirt road but declined, assigning as his reason the absence of chains and the slippery condition of the road. He then started back to the city of York with his passengers and Eberly made another unsuccessful attempt to borrow money from a friend on the way. The driver proceeded to a police station and appellant

was carried as a "helpless drunk" to a cell. He wakened early in the morning of the 24th but was detained until shortly after five o'clock that evening and was then discharged.

The chief of police testified he at no time noticed any burns or injuries of any kind to appellant's back, hips or legs and that the only burn to which appellant made any reference was one on his hand which he said had been received several days previous. The sergeant of police, who helped to carry appellant from the cab, testified he observed no evidence of any burns either to his person or clothing. Appellant, himself, testified he was unconscious from the time he fell in the alley until he awoke in the cell and then found he had a lump on the back of his head and had been severely burned upon the back and down his left leg. His wife testified he was uninjured when he left home on the afternoon of the 23d and that she did not again see him until nine o'clock on the evening of the 24th when he came home with the injuries mentioned and from the effects of which he was confined to bed for several months.

The negligence averred in the statement was that the cab driver, knowing that the heater "was of a temperature such as to burn and injure the plaintiff" and that "it was inevitable that plaintiff falling upon it would be burned," recklessly disregarded the safety of his passenger and "with a willful and wanton negligence refused to help ...... [appellant's companion] in placing [appellant] back to the seat in a position of safety."

Upon a review of the record in considering the motion for judgment n. o. v., the court below stated its conclusions in this language:

"There was no evidence that the heater in the taxi was defective in any way. There was uncontradicted, positive evidence that it was of the best and safest construction in general use, and that neither before

nor after the plaintiff had been in the taxi, the condition of the heater was such as could have produced the injury complained of ...... There was no effort made at the trial to exclude the possibility that some outside agency had caused plaintiff's alleged injuries. Plaintiff was in defendant's taxicab for less than two hours. He was unconscious in the lock-up for four hours thereafter, and he appeared to his wife twenty-four hours thereafter, complaining of the burns. The case is barren of any evidence that the so-called heater, either before or after, or while the plaintiff was in contact with it on the floor of defendant's cab, was in any way out of order, or was hot, or did or could have cooked or burned plaintiff's flesh.

"The circumstances leave open the reasonable probability of the injury being caused by some other agency than any for which the defendant was responsible. The conclusion that plaintiff's injury was the result of contact with the so-called heater, in the absence of evidence that there was anything wrong with it, or that it burned the plaintiff, or was hot enough at any time to burn anybody or anything, would amount to no more than a guess."

Counsel for appellant argues that he neither charged nor attempted to prove a defect in the construction of the heater, but sought to recover upon the theory that appellant's injuries were caused by the negligence of the cab driver in refusing to assist Eberly in lifting him from the heater and placing him on the seat of the cab. Even if we assume that appellant received his injuries in the cab and that the driver refused Eberly's request, the question whether such refusal amounted to negligence would necessarily depend upon the circumstances.

Replacing passengers on their seats is not one of the usual and ordinary duties of taxi drivers, but when a driver has accepted a passenger who is unable, from intoxication or any other cause, to care for himself

circumstances may arise imposing that duty upon him. It was entirely proper for the court below to consider the evidence relative to the construction and condition of the heater; that was of importance when considering the conduct of the driver; if appellant had shown it was defective, the question whether the driver should have been aware of the defect might have been for the jury.

Appellant had the burden of supporting, by competent evidence, the charge of negligence set out in his statement of claim, viz., that the driver knew, or, under all the circumstances, should have known, "that the heater at the time was of a temperature such as to burn and injure" appellant if he was permitted to lie upon it. When weighing the question of the driver's alleged negligence in the light of Eberly's testimony that he appealed to him for assistance in lifting appellant from the floor, it may be interesting to note that when Eberly had ample assistance upon reaching Red Lion neither he, nor any of appellant's friends, deemed it necessary or advisable to put him on the seat. In our opinion, this record is lacking in evidence from which a jury could reasonably be permitted to find the driver knew, or should have known, that the natural and probable consequence of permitting appellant to remain upon the floor of the cab would be the suffering by him of physical injury. The court below, therefore, did not err in granting appellee's motion for judgment in his favor.

Judgment affirmed.